**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHELLE L. BARBARITO,**

                    **Plaintiff,**                    **7:11-cv-179**
                                                      **(GLS/TWD)**

            **v.**

**JOHN McHUGH,** Secretary of the
Army,

                    **Defendant.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Christine A. Agola, PLLC     CHRISTINA A. AGOLA, ESQ.
1415 Monroe Avenue
Brighton, NY 14618

Reeve Brown PLLC                       STEVEN E. LAPRADE, ESQ.
3380 Monroe Avenue, Suite 200
Rochester, NY 14618

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN             WILLIAM F. LARKIN
United States Attorney                Assistant U.S. Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

**Gary L. Sharpe**
**Chief Judge**

### MEMORANDUM-DECISION AND ORDER

#### I. Introduction

Plaintiff Michelle L. Barbarito commenced this retaliation action under Title VII of the Civil Rights Act of 1964[1] against defendant John McHugh,[2] secretary of the Army, seeking damages related to her employment with the Army.  (*See* Compl., Dkt. No. 1.)  Barbarito contends that, as a result of engaging in protected Equal Employment Opportunity (EEO) activity, she suffered adverse employment action.  (*See id.* ¶¶ 20-27.)  Pending before the court is McHugh's motion for summary judgment dismissing the Complaint.  For the following reasons, the motion is granted in part and denied in part.

## II.  Background

### A.   Facts[3]

Barbarito is a Branch Chief of the Personnel Processing Branch (PPB), Military Personnel Division (MPD) at Fort Drum, an Army post located in Jefferson County, New York.  (*See* Def.'s Statement of Material

---

[1] *See* 42 U.S.C. §§ 2000e-2000e-17.

[2] Pete Geren was originally named as the sole defendant in this action.  (*See* Compl., Dkt. No. 1.)  By stipulation, McHugh, who succeeded Geren as Secretary of the Army, was substituted as the named defendant.  (*See* Dkt. No. 17.)  Despite this substitution, only McHugh is referenced herein.

[3] Unless otherwise noted, the facts are undisputed.

Facts (SMF) ¶ 1, Dkt. No. 30, Attach. 2); *United States v. Volpe*, 986 F. Supp. 122, 123 (N.D.N.Y. 1997).  Barbarito has worked for the Army since 1982, and has served as Branch Chief since February 2007, a position that requires her to oversee and manage certain aspects of the PPB.  (*See* Def.'s SMF ¶¶ 2, 4.)  The relevant incidents are summarized chronologically.

On April 30, 2008, Barbarito had an argument with her first-line supervisor—Chief, MPD, Terrial Mayberry.  (*See id.* ¶¶ 9-12; Dkt. No. 29, Attach. 4 at 34.)  Barbarito contends that the argument ended with Mayberry telling her "to 'get the hell out' of his office, and that she was 'damn lucky to still have a job.'"  (Def.'s SMF ¶ 12.)  Following the argument with Mayberry, Barbarito contacted the EEO office regarding the incident; immediately afterward, she told her second-line supervisor, Director of Human Resources Gregory Ferguson, that she had gone to the EEO office regarding Mayberry.  (*See id.* ¶¶ 7-8, 13; Pl.'s SMF ¶¶ 13-14, Dkt. 35, Attach. 1 at 30.)  Ferguson and Mayberry referred Barbarito to the Employee Assistance Program (EAP), which assists employees with "family, financial, or other types of personal problems."  (Def.'s SMF ¶¶ 20-21.)  In May 2008, Mayberry left his position as Chief, MPD, for medical

reasons, causing Ferguson to designate Irving Heinzman as Acting Chief, MPD.  (*See id.* ¶¶ 22-23.)  On May 6, 2008, Barbarito was given a "Written Warning" by Ferguson that pertained to the incident with Mayberry on April 30, 2008, as well as a referral to EAP.  (*See id.* ¶¶ 24-26; Dkt. No. 29, Attach. 4 at 33-34.)

On October 21, 2008, Barbarito testified at an EEO fact-finding conference related to a co-worker's complaint.  (See Def.'s SMF ¶ 27; Pl.'s SMF ¶ 15.)  Soon thereafter, in November 2008, Barbarito applied for the Chief, MPD, position formerly held by Mayberry.  (*See* Def.'s SMF ¶ 30.) Ferguson ultimately cancelled the vacancy for which Barbarito had applied. (*See id.* ¶ 32.)  The parties dispute whether that cancellation was the result of Ferguson's intention to appoint a Chief from a different installation or to retaliate against Barbarito.  (*See id.*; Pl.'s Resp. to Def.'s SMF ¶ 32, Dkt. No. 35, Attach 1 at 2.)

The next relevant incident occurred in January 2009 when Heinzman, the Acting Chief, gave Barbarito a performance appraisal indicating a rating of "3."  (*See* Def.'s SMF ¶¶ 34-35.)  Ferguson and Heinzman originally proposed that Barbarito be rated as a "3" with a contributing factor adjustment of "+1"; the Pay Pool Panel, responsible for review of

those ratings, determined, however, that Barbarito did not meet the criteria

for the contributing factor adjustment. (*See id.* ¶¶ 36-40.) Deputy Garrison

Commander Judith Getner denied Barbarito's request for reconsideration

of her performance appraisal. (*See id.* ¶¶ 42-44.) Despite Barbarito's

dissatisfaction with the rating, which was identical to that of her prior year's

appraisal, she received a performance-based salary increase and bonus.

(*See id.* ¶¶ 35, 45.)

On April 3, 2009, following an incident involving a conversation with

MPD Secretary Traci Taylor-Bush in March 2009, in which she claimed that

Barbarito "was very rude . . . and yelled at her and pounded on her desk,"

Heinzman issued a "Notice of Proposed Suspension" reflecting a one-day

suspension without pay for Barbarito. (Dkt. No. 29, Attach. 3 at 31; Dkt.

No. 29, Attach. 6 at 19-22; *see* Def.'s SMF ¶¶ 46-47, 54.) Ferguson

reduced the discipline to a letter of reprimand to remain in Barbarito's file

for one year on May 7, 2009; on April 7, 2009, after the incident with

Taylor-Bush but before the letter of reprimand was issued, Barbarito met

with an EEO counselor for a pre-complaint interview. (*See* Dkt. No. 29,

Attach. 4 at 25, 27; Dkt. No. 29, Attach. 7 at 2-5; Pl's SMF ¶ 16.)

On May 12, 2009, Barbarito received an interim performance

assessment.  (*See* Def.'s SMF ¶ 59.)  In disagreeing with Barbarito's self-assessment that there were "no instances of EEO/EO principle violations, prohibited personnel practices, discrimination, harassment or retaliation related complaints within the Branch," Heinzman referenced "a formal complaint file[d] against her for discourtesy and rudeness," and further stated, among other things, that she "needs additional training and monitoring to improve her people skills."  (Dkt. No. 29, Attach. 7 at 8.)

Barbarito also experienced some difficulty with co-worker Gilbert McEachern, another Branch Chief in MPD.  (*See* Def.'s SMF ¶¶ 63, 69-70.) After Heinzman's retirement in May 2009, Ferguson selected McEachern to serve as Acting Chief, MPD, instead of Barbarito or the only other Branch Chief in MPD.  (*See id.* ¶¶ 62-64.)  In July 2009, McEachern and Barbarito had a disagreement in the hallway at MPD, which led to a meeting between them and Ferguson, and Ferguson attempting to mediate the situation by explaining that, among other things, their behavior was unprofessional.  (*See id.* ¶¶ 69-70; Dkt. No. 29, Attach. 4 at 28-29.)

Prior to Heinzman's retirement, a vacancy announcement for the Chief, MPD, position was re-announced.  (*See* Def.'s SMF ¶¶ 62, 72.) Barbarito was one of eleven candidates to make a referral list for the

vacancy, all of whom were independently ranked by members of a ranking panel based upon certain criteria.  (*See id.* ¶¶ 72-76.)  None of the panel members knew of Barbarito's prior protected EEO activity.  (*See id.* ¶ 78.) Barbarito ranked seventh out of eleven, and the position was offered to the candidates in the order that they were ranked until accepted by Jim Swords, who was ranked fourth.  (*See id.* ¶¶ 77, 81-84.)

**B.    Procedural History**

Barbarito commenced this action on May 26, 2010 by filing her Complaint in the Western District of New York.  (*See generally* Compl.)  In her pleading, Barbarito alleges that, as a result of engaging in protected activity, she was retaliated against through adverse employment actions perpetrated by Ferguson, Heinzman, and McEachern.  (*See id.* ¶¶ 7-24.) Consequently, she seeks compensatory and exemplary damages, and attorney's fees.  (*See id.* ¶¶ 25-27.)  McHugh moved to dismiss or, alternatively, to transfer for improper venue, (*see* Dkt. No. 7), and the parties thereafter stipulated to transfer to the Northern District of New York, (*see* Dkt. No. 10).  Following joinder of issue and the conclusion of discovery, (*see* Dkt. No. 13), McHugh moved for summary judgment, (*see* Dkt. No. 29).

### III.  **Standard of Review**

The standard of review pursuant to Fed. R. Civ. P. 56 is well

established and will not be repeated here.  For a full discussion of the

standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

### IV.  **Discussion**

McHugh makes two principal arguments in support of his motion for

summary judgment.  First, he contends that Barbarito failed to exhaust

administrative remedies with respect to her allegations occurring more than

forty-five days prior to her EEO contact on April 7, 2009, rendering them

untimely.  (*See* Dkt. No. 30, Attach. 1 at 8-9.)  Second, McHugh claims that

Barbarito "cannot demonstrate a prima facie case of retaliation as to a

majority of her allegations, or that [the] legitimate, non-retaliatory reasons"

McHugh offers for the actions of Ferguson, Heinzman, and McEachern

"were pretext for unlawful retaliation."  (*Id.* at 11-22.)

### A.  **Exhaustion of Administrative Remedies**

Employees suing certain federal government agencies as employer

under Title VII are required to exhaust administrative remedies before they

may bring suit in a court of law.  *See Boos v. Runyon*, 201 F.3d 178, 181

(2d Cir. 2000); *see also* 29 C.F.R. § 1614.103.  Specifically, an employee believing that he or she has been discriminated against "must initiate contact with a[n EEO] Counselor within [forty-five] days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).  Within a certain time frame, the employee must thereafter file an EEO complaint "with the agency that allegedly discriminated against the complainant." *See id.* § 1614.106(a).  The forty-five-day requirement of section 1614.105 is subject to equitable tolling, but the plaintiff bears the burden of showing extraordinary circumstances to justify such tolling.  *See Boos*, 201 F.3d at 184-85.

Here, Barbarito offers no explanation for her failure to exhaust her administrative remedies prior to April 7, 2009, and she fails to make even a suggestion that equitable tolling is appropriate or that some other exception may save her untimely claims.[4]  Instead, Barbarito contends, in an argument that is not directly responsive to McHugh's, that she engaged in protected activity on both April 30, 2008 and October 21, 2008.  (*See*

―――――――――――――――――

[4] For example, under certain circumstances, claims not raised in an EEO charge can be sufficiently related to timely ones, rendering their exclusion from a civil action unfair to the plaintiff.  *See Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003).  This is, by no means, a suggestion that Barbarito could have made such a showing in this case.

Dkt. No. 35 at 5-6.)[5]  While she initiated contact with an EEO counselor on April 30, 2008 related to the incident of the same date with Mayberry and, later, Ferguson, (*see* Pl.'s SMF ¶ 13), Barbarito did not exhaust her administrative remedies regarding that incident by filing a complaint as required under the applicable regulations,[6] *see* 29 C.F.R. § 1614.106. Similarly, the testimony given by Barbarito in October 2008 was not the initiation of contact required under section 1614.105, and it did not relate to a belief by her that she had been discriminated against.  Indeed Barbarito's purpose in giving testimony was related to a co-worker's claim of discrimination.  (*See* Pl.'s SMF ¶ 15.)

Accordingly, Barbarito failed to exhaust with respect to several of her allegations.  In particular, any incident occurring more than forty-five days before her April 7, 2009 contact with the EEO office, the only time she properly exhausted, cannot be the basis of this action.  *See Boos*, 201

_____

[5] Notably, Barbarito's suggestion that McHugh violated Fed. R. Civ. P. 11, (*see* Dkt. No. 35 at 4-5), is without merit.  Her argument is premised on an apparent misunderstanding of the applicable law; that is, Barbarito seems to overlook the requirements placed on certain federal employees claiming retaliation by 29 C.F.R. pt. 1614.

[6] While the parties agree that Barbarito "filled out paper-work" at the EEO office on April 30, 2008, (Pl.'s SMF ¶ 13), there is no allegation that she took any further steps to pursue a claim of retaliation.

F.3d at 181.[7]

## B.   <u>Timely Claims</u>

With respect to the timely claims, McHugh argues that Barbarito "cannot demonstrate a prima facie case of retaliation as to a majority of her allegations, or that [his] legitimate, non-retaliatory reasons for [his] actions were pretext for unlawful retaliation."  (Dkt. No. 30, Attach. 1 at 11.) Barbarito's timely claims of retaliatory adverse action are as follows: (1) the discipline that followed her interaction with Taylor-Bush in March 2009; (2) her "unfair" interim performance assessment of May 2009, (Dkt. No. 35 at 14); (3) McEachern's appointment as Acting Chief, MPD, in May 2009, instead of her, and the incidents with him before and after that appointment; and (4) that she was not selected as Chief, MPD, when the position was re-announced in March 2009.  (*See* Compl. ¶¶ 10(l)-(k), 11(b)-(c), 12-19.)

The framework set forth in *McDonnell Douglas Corp. v. Green*, 411

---

[7] Despite the fact that she failed to satisfy the condition precedent as to those untimely allegations, they may still be relevant as background evidence for timely claims, and they are considered, where appropriate, for that purpose.  *See Jute v. Hamilton Sundstand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005).

U.S. 792 (1973), applies to claims of retaliation under Title VII.  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  In order to make a prima facie claim of retaliation, the plaintiff must show "that[:] '(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.'"  *Id.* (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006)).  After the plaintiff establishes the foregoing elements, the burden of production shifts to the defendant to show that there were "legitimate, nondiscriminatory" reasons for its actions.  *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001).  Provided that the defendant makes such a showing, the burden again shifts, this time back to the plaintiff, "to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*

    As to Barbarito's prima facie showing, because McHugh concedes that Barbarito engaged in protected activity in April and October 2008, (*see* Dkt. No. 30, Attach. 1 at 3-4; Dkt. No. 40 at 3), and her initiation of the complaint underlying this action is protected, *see* 42 U.S.C. § 2000e-3(a),

that showing is deemed satisfied, leaving for consideration the remaining three elements.  The court now considers each of the timely claims of retaliation as set forth above; in addition, it examines Barbarito's newly-raised contention that a hostile work environment created and perpetuated by Ferguson and McEachern also amounts to retaliatory adverse action. (*See* Dkt. No. 35 at 10-12.)

     *1.   Taylor-Bush Incident*

McHugh argues that there is no casual connection between the discipline proposed by Heinzman related to the Taylor-Bush incident—an unpaid one-day suspension—and her protected activity because Heinzman was unaware that she engaged in protected activity at that time.  (*See* Dkt. No. 30, Attach. 1 at 16.)  McHugh also asserts that McEachern gave a statement in support of Taylor-Bush's complaint against Barbarito, which corroborates Taylor-Bush's account, and that Ferguson, also accused of retaliation, reduced the proposed punishment, which cannot be viewed as adverse to Barbarito.  (*See id.* at 16-17.)

Barbarito responds by claiming that, on April 3, 2009, Ferguson and Heinzman threatened her with suspension, and, on May 7, 2009, Ferguson wrongfully issued a letter of reprimand "for a series of events concerning

. . . Mayberry[8] that never transpired," which amounts to adverse

employment action.  (Dkt. No. 35 at 13.)  She also claims that a causal

relationship is shown by the timing of her protected activity and the adverse

action.  (*See id.* at 15-16, 18-19.)  Specifically, the suspension was

proposed five months after she gave testimony at an EEO hearing, and the

letter of reprimand was issued one month after she initiated contact with

the EEO office on April 7, 2009.  (*See id.*)  Finally, assuming that she made

a prima facie showing, and that McHugh has offered a legitimate,

nondiscriminatory reason for the employment action at issue here,

Barbarito contends that indirect evidence—through the same argument

regarding the timing of the allegedly adverse action—and direct

evidence—Ferguson's April 30, 2008 questions and comments regarding

her EEO activity of the same day—show pretext.  (*See id.* at 20-23.)

Here, it is undisputed that Heinzman was unaware of Barbarito's

protected activity at the time he proposed her suspension.  (*See* Dkt. No.

─────────────────────

[8] Although Barbarito claims that the proposed suspension and letter
of reprimand arose out of a fabricated incident with Mayberry, he abruptly
left his position in May 2008, which led to Heinzman's designation as
Acting Chief, MPD.  (*See* Def.'s SMF ¶¶ 22-23.)  Thus, it seems that
Barbarito likely meant to refer to Heinzman, and not Mayberry, with
respect to the letter of reprimand.

29, Attach. 6 at 6, 11.)  Ferguson also testified during a deposition that the decision to propose suspension was Heinzman's, and that he played no role in that decision.  (*See* Dkt. No. 29, Attach. 4 at 24-27.)  While Barbarito claims that "Ferguson *caused* [her] to receive a Notice of Proposed Suspension," and cites to, among other things, the transcript of her deposition, (Dkt. No. 35 at 13 (emphasis added)), in which she claims that Heinzman told her that Ferguson "said [Heinzman] need[ed] to" give her the notice of suspension, (Dkt. No. 35, Attach. 4 at 98, 106-07), Barbarito's double hearsay deposition testimony is inadmissible and cannot establish the existence of a material issue of fact, *see* Fed. R. Civ. P. 56(c)(1)(B).  Accordingly, Barbarito has failed to make a prima facie showing as to the proposed notice of suspension because Heinzman—who was solely responsible for its issuance—was unaware that she had engaged in protected activity at the time, demonstrating the absence of a causal connection despite the fact that he proposed suspension just over five months after she engaged in protected activity. *See Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Turning to Ferguson's reduction of the proposed suspension to a letter of reprimand, there are triable issues of fact.  In particular, although

15

Ferguson reduced the proposed suspension, (*see* Dkt. No. 29, Attach. 4 at 25-27; Dkt. No. 29, Attach. 7 at 2-5), Barbarito contends that the letter of reprimand was "wrongfully issued . . . for a series of events . . . that never transpired," (Dkt. No. 35 at 13).  Even though Taylor-Bush undisputedly made a complaint about Barbarito, and McEachern corroborated Taylor-Bush's account by providing a supporting statement regarding the incident, (*see* Dkt. No. 29, Attach. 3 at 34; Dkt. No. 29, Attach. 6 at 17), if the complaint was unfounded as Barbarito alleges, (*see* Dkt. No. 35, Attach. 4 at 103), any discipline Ferguson meted out regarding the incident would have been adverse to her.  Moreover, the timing of Ferguson's action in this instance, one month after she initiated EEO office contact, demonstrates that there is an issue of fact regarding whether a legitimate, nondiscriminatory reason existed for the action or such reason was simply pretext for retaliation.  (*See* Pl.'s SMF ¶ 16; Dkt. No. 29, Attach. 7 at 2-5.)

   2.   *Interim Performance Assessment*

   Next, McHugh argues that Barbarito's May 12, 2009 interim performance assessment, which mentioned a formal complaint filed against her, does not constitute adverse action because it "had no effect on her duties, pay, or benefits, and her final assessment was exactly the

16

same as she had received during the two prior rating periods." (Dkt. No. 30, Attach. 1 at 17-18.)  McHugh further contends that a legitimate and nondiscriminatory reason supports the action should the court find it adverse to Barbarito. (*See id.*)  Specifically, Heinzman mentioned the formal complaint filed against Barbarito to clarify a discrepancy in her self-assessment.  (*See id.*)  While Barbarito claims that Heinzman's interim performance assessment was unfair, and that Ferguson concurred with it as a high-level reviewer, she does not contend that the interim performance assessment had any negative impact upon her.  (*See* Dkt. No. 35 at 14-15.)  She does argue, however, that, but for the earlier January 2009 performance appraisal and May 2009 letter of reprimand, she would have been appointed as Acting Chief, MPD.  (*See id.* at 15.)

While a critical or negative performance evaluation may constitute adverse employment action, where there is no proof that such evaluation has any effect on the terms and conditions of the plaintiff's employment it is not actionable.  *See Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755-56 (2d Cir. 2004).  Here, because the undisputed facts simply do not show that the interim performance assessment had any effect on the terms and conditions of Barbarito's employment, and she does not even allege

17

as much, summary judgment is granted as to this claim.  *See Gelin v. Paulson*, 234 F. App'x 5, 7 (2d Cir. 2007).

    *3.    McEachern's Appointment as Acting Chief, MPD, and Other Incidents*

McHugh asserts that Ferguson's failure to appoint Barbarito as Acting Chief, MPD, was not adverse action because the designation of a Branch Chief as Acting Chief, MPD, "was made primarily based upon who had time to take on the additional duties," and not being selecting could "objectively be seen as a benefit to [Barbarito], rather than an adverse action."  (Dkt. No. 30, Attach. 1 at 18-19.)  Moreover, McHugh claims that Ferguson had legitimate, nondiscriminatory reasons for not selecting Barbarito; namely, that she had recently had an incident with Taylor-Bush, who would serve as secretary to the Acting Chief, MPD.  (*See id.* at 19.)  With respect to the incidents between Barbarito and McEachern on July 16 and 17, 2009, McHugh argues that the incidents, which merely resulted in Ferguson scolding both for "unprofessional behavior," are trivial, and, thus, not actionable.  (*See id.*)

Barbarito fails to address McHugh's argument that her non-selection was not adverse action, but does contend that Ferguson's decision

18

followed one month after she engaged in protected activity, which indirectly

shows pretext.  (*See* Dkt. No. 35 at 20.)  As to the incidents with

McEachern, Barbarito claims that she was excluded from work-related

meetings, activities, and events beginning the day after she participated in

protected EEO activity, and "just over two (2) months" later, he "screamed

[at] and admonished [her] in the presence of subordinate employees and

customers."  (*Id.* at 11, 19, 20.)

Here, there are issues of fact that preclude summary judgment as to

Barbarito's nonselection as Acting Chief, MPD.  First, depriving Barbarito

of that title and whatever additional job responsibilities came along with it

could amount to adverse action.  *See Terry v. Ashcroft*, 336 F3d 128, 138

(2d Cir. 2003) ("Examples of materially adverse changes include

termination of employment, a demotion evidenced by a decrease in wage

or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices . . . unique to a

particular situation." (internal quotation marks and citation omitted)).

Second, for the same reasons identified above, if Barbarito's nonselection

was adverse, there is a question about whether the legitimate and

nondiscriminatory reason offered by McHugh—that Barbarito would be

forced to work closely with Taylor-Bush—was pretext.  *See supra* Part.IV.B.1.

Even though Barbarito's contention that "[u]pon information and belief, . . . McEachern was aware that [she] engaged in EEO protected activity," (Dkt. No. 35 at 11 n.5; *see* Dkt. No. 35, Attach. 4 at 139-40), cannot establish knowledge on the part of McEachern, the inference created by the timing of his actions in relation to her protected activity is sufficient to demonstrate a causal connection.  *See Gordon*, 232 F.3d at 117.  However, the injury or harm suffered by Barbarito regarding these incidents simply was not "materially adverse" such that McEachern's conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).  The incidents of which Barbarito complains were relatively petty and minor.  For that reason, Barbarito has failed to show that adverse employment action was taken against her.

*4.    Re-Announcement of Chief, MPD, Position*

As to Ferguson's nonselection of Barbarito for the Chief, MPD, position, McHugh contends that a more qualified candidate was selected,

and that she cannot establish pretext under the circumstances leading to the selection of Swords for that position.  (*See* Dkt. No. 30, Attach. 1 at 20-22.)  Barbarito makes no argument regarding her nonselection for the Chief, MPD, position.  Notably, she fails to make any showing whatsoever that the legitimate, nondiscriminatory reasons offered by McHugh for Ferguson's action were pretextual.

Finding that McHugh sustained his burden of offering a legitimate, nondiscriminatory reason for Barbarito's nonselection for Chief, MPD, based upon, among other things, the independence of the ranking panel and the manner in which the position was offered to the highest ranked candidates first, it is incumbent upon Barbarito that she make a showing of pretext.  *See Monachino v. Bair*, 481 F. App'x 20, 21-22 (2d Cir. 2012). Because she has failed to even attempt to do so, summary judgment is granted as to this incident.

5.    *Hostile Work Environment*

For the first time in her response, Barbarito argues that, as a result of Ferguson's admonishment and threats on April 30, 2008, McEachern's exclusionary practices in April 2009, and the incidents involving McEachern in July 2009, she was subjected to a hostile work environment, which is a

21

cognizable adverse employment action.  (*See* Dkt. No. 35 at 10-12.)  First, McHugh attacks this argument as not properly before the court because it was not alleged in the Complaint.  (*See* Dkt. No. 40 at 5-6.)[9]  Second, he contends that Ferguson's comments were, at most, "merely offensive," and do not rise to a sufficient level.  (*Id.* at 6.)  Lastly, McHugh asserts that Barbarito failed to show that McEachern knew that she engaged in protected activity, and, therefore, that his actions were motivated by retaliatory animus.  (*See id.* at 7.)

While Barbarito correctly asserts that a hostile work environment perpetrated by harassing co-workers can be adverse action in the context of a retaliation claim, *see Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 445-46 (2d Cir. 1999), *abrogated on other grounds by Burlington*, 548 U.S. 53, as explained above, *see supra* Part.IV.B.3, Barbarito's run-ins with McEachern are not actionable, leaving a single incident with Ferguson in which he questioned Barbarito about making contact with the EEO office, told her she had the tendencies of a former disliked Branch Chief, and informed her that he "could '*fire*' her."  (Pl.'s

---

[9] Although she did not nominally allege a hostile work environment in her Complaint, Barbarito pleaded facts sufficient to raise that theory of adverse action.  (*See generally* Compl.)

SMF ¶¶ 18(A)-(B).)  An isolated incident such as this one is not actionable. *See Richardson*, 180 F.3d at 436 (requiring conduct "so severe or pervasive as to create an objectively hostile or abusive work environment, and where the victim subjectively perceive[s] the environment to be abusive" (internal quotation marks and citation omitted)).[10]  Accordingly, summary judgment in favor of McHugh is appropriate as to this claim.

## V.  Conclusion

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that McHugh's motion for summary judgment (Dkt. No. 29) is **GRANTED IN PART** and **DENIED IN PART** as follows:

GRANTED as to all incidents **EXCEPT**: (1) the letter of reprimand that followed the Taylor-Bush incident; and (2) Barbarito's nonselection as Acting Chief, MPD; and it is further

ORDERED that this case is deemed trial ready and the court, in due course, shall issue a trial scheduling order; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-

_____

[10] Even if the allegations pertaining to McEachern and Ferguson are considered together, they do not rise to the necessary level of severity to be actionable.

23

Decision and Order to the parties.

**IT IS SO ORDERED.**

May 15, 2013
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
Chief Judge
U.S. District Court